U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2022 AUG 11 AM 10: 39

CLERK

BY ____ DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

JOHNATHAN J. BILLEWICZ, MICHAEL W. BILLEWICZ, J and M INVESTMENT TRUST, and LILLIAN E. BILLEWICZ,

Plaintiffs,

v.

TOWN OF FAIR HAVEN, VERMONT, Town of Fair Haven Police Chief WILLIAM T. HUMPHRIES, individually and official capacity, Town of Fair Haven Department of Public Works Employees JOHN DOES, official capacity, Town of Fair Haven, Vermont Administrative Personnel JOHN AND JANE DOES, official capacity,

Defendants.

Case No. 5:22-cv-73

**OPINION AND ORDER**
**(Docs. 9, 10, 14, 17)**

Plaintiffs Johnathan J. Billewicz, Michael W. Billewicz, J and M Investment Trust (the "Trust"), and Lillian E. Billewicz (a trustee of the Trust), proceeding pro se,[1] have brought a two-count Complaint under 42 U.S.C. § 1983 against the Town of Fair Haven (the "Town"), the Town's police chief William T. Humphries, and unnamed Town public works and administrative

[1] Section 1654 of Title 28 guarantees the right to proceed pro se in civil actions, but "appearance pro se denotes . . . appearance for one's self; so that a person ordinarily may not appear pro se in the cause of another person or entity." *Pridgen v. Andresen*, 113 F.3d 391, 393 (2d Cir. 1997). The Trust cannot proceed as a party in this case unless it is represented by an attorney. *See United States v. Swartz*, 391 F. Supp. 3d 199, 214 (N.D.N.Y. 2019) (trust was "a separate legal entity that must be represented by counsel in federal court"); *Bell v. S. Bay European Corp.*, 486 F. Supp. 2d 257, 259 (S.D.N.Y. 2007) ("[A] trust is deemed an artificial entity for the purposes of the rule barring a nonlawyer trustee from representing the interests of the trust."). However, the court's conclusions below resolve all of Plaintiffs' claims and it is therefore unnecessary to require the Trust to obtain legal representation.

personnel. (Doc. 1.) The first count alleges that on September 19, 2019, the Town and Chief Humphries deprived Plaintiffs of access to their personal property and real property in the Town at 16–18 River Street and at 5 and 7 Union Street when Chief Humphries accused Johnathan and Lillian Billewicz of burglary and threatened to arrest them if they went to the properties. The second count alleges that the Town and unnamed Town public works and administrative personnel (the "Doe" defendants) unlawfully seized Plaintiffs' property at 16–18 River Street in September 2019 by placing sheets of plywood over the entrances. For relief, Plaintiffs seek compensatory damages.

Defendants have filed a motion to dismiss under Fed. R. Civ. P. 12(b)(6), arguing that Plaintiffs' claims are barred by claim preclusion, the statute of limitations, and the *Rooker-Feldman* doctrine, and that there is no legal basis for the requested relief. (Doc. 9.) Plaintiffs oppose the motion (Doc. 12) and Defendants filed a reply on May 25, 2022 (Doc. 15). Three other motions are also pending. First, Defendants have filed a motion for sanctions under Fed. R. Civ. P. 11, arguing that this case is Plaintiffs' fourth attempt to litigate the same set of facts. (Doc. 10.) Second, Lillian Billewicz has filed a "Motion to Clarify Parties" to omit Michael W. Billewicz as a plaintiff. (Doc. 14.) Third, Plaintiffs have filed a motion to disqualify Defendants' attorneys from dual representation of the Town and Chief Humphries. (Doc. 17.)

## Background

The court summarizes the factual allegations in the Complaint here. Additional facts relevant to Defendants' motion are set forth in the analysis below.

Johnathan and Lillian Billewicz maintain residences in the Town of Fair Haven, Vermont. (Doc. 1 ¶¶ 3, 6.) Michael Billewicz resides in Providence, Rhode Island. (*Id.* ¶ 4.) Johnathan and Michael Billewicz are the "lawful owners" of real property located at 16–18 River

Street, Fair Haven, Vermont. (*Id.* ¶ 11.) The Trust is the "lawful owner" of 5 and 7 Union Street, Fair Haven, Vermont. (*Id.* ¶¶ 12–13.)

On or about September 19, 2019, Chief Humphries threatened to arrest Johnathan and Lillian Billewicz if they "were to be caught" at the River Street or Union Street properties. (*Id.* ¶ 15.) On the same date, he stated that he "would arrest" Johnathan and Lillian Billewicz if they went to the properties. (*Id.* ¶ 16.) Plaintiffs assert that at all relevant times, Chief Humphries acted "within the scope of his employment," "under the color of law," and "pursuant to policy or custom of the Town of Fair Haven in depriving citizens of Constitutionally protected property rights." (*Id.* ¶¶ 8, 19.)

Plaintiffs further allege that, in or about September 2019, Town Department of Public Works ("DPW") personnel placed sheets of plywood over the entrances to the River Street property. (*Id.* ¶ 24.) According to Plaintiffs, the DPW workers acted "under the direction and supervision of unnamed Administrative Personnel, Police Chief Humphries and other unknown individuals." (*Id.*; *see also id.* ¶ 29.) Plaintiffs assert that, at all relevant times, the Town administrative staff, DPW workers, and the Police Department "acted pursuant to policy or custom of the Town of Fair Haven in depriving citizens of Constitutionally protected property rights." (*Id.* ¶ 26.)

Plaintiffs filed their Complaint in this court on March 28, 2022. (Doc. 1.)

## Analysis

### I. Motion to Disqualify Attorneys (Doc. 17)

Plaintiffs move to disqualify the attorneys representing Defendants, arguing that their representation of both the Town and of Chief Humphries raises an "inherent conflict of interest." (Doc. 17 at 2.) Defendants assert that the motion is "specious and meritless." (Doc. 18 at 1.)

They maintain that: (1) Plaintiffs lack standing to move for disqualification; (2) Plaintiffs have cited no facts indicating a conflict of interest between the Town and Chief Humphries; and (3) the record reveals no such conflict.

"The authority of federal courts to disqualify attorneys derives from their inherent power to 'preserve the integrity of the adversary process.'" *Hempstead Video, Inc. v. Inc. Vill. of Valley Stream*, 409 F.3d 127, 132 (2d Cir. 2005) (quoting *Bd. of Educ. of City of N.Y. v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir. 1979)). Although "decisions on disqualification motions often benefit from guidance offered by the American Bar Association (ABA) and state disciplinary rules . . ., such rules merely provide general guidance and not every violation of a disciplinary rule will necessarily lead to disqualification." *Id.* "Because courts must guard against the tactical use of motions to disqualify counsel, they are subject to fairly strict scrutiny . . . ." *Murray v. Metro. Life Ins. Co.*, 583 F.3d 173, 178 (2d Cir. 2009) (quoting *Lamborn v. Dittmer*, 873 F.2d 522, 531 (2d Cir. 1989)).

Defendants note that, "[a]s a general rule, courts do not disqualify an attorney on the grounds of conflict of interest unless the former client moves for disqualification." *United States v. Rogers*, 9 F.3d 1025, 1031 (2d Cir. 1993) (quoting *United States v. Cunningham*, 672 F.2d 1064, 1072 (2d Cir. 1982)). But *Rogers* was a criminal case where the issue was standing to seek disqualification due to conflicting *prior* representation. The *Rogers* court was not presented with a challenge to conflicting *current* representation and did not discuss the exceptions to the general rule it articulated.

In civil cases decided since *Rogers*, courts within the Second Circuit have noted that parties have standing to seek disqualification of counsel for the opposite party on conflict-of-interest grounds. *See Robinson v. New York*, No. 08-CV-00908(S)(M), 2010 WL 2775850, at *1

n.4 (W.D.N.Y. July 14, 2010) (plaintiff had standing to seek New York Attorney General's disqualification from representing defendants); *Aetna Cas. & Sur. Co. v. Manshul Constr. Corp.*, No. 95 Civ. 3994 (LMM), 1997 WL 214946, at *11 n.12 (S.D.N.Y. Apr. 29, 1997) ("An adverse party has standing to move to disqualify the attorney for the opposite party on the ground of conflict of interest."). Courts outside the Second Circuit have reached similar conclusions. *See, e.g.*, *Kevlik v. Goldstein*, 724 F.2d 844, 847 (1st Cir. 1984) (joining Fourth and Fifth Circuits in holding that "disqualification may rightly be sought by opposing counsel even though he/she is not representing the aggrieved client").

That said, the court need not decide the standing question in this case because, even assuming that Plaintiffs have standing to seek defense counsel's disqualification, they have not met their burden to obtain that relief. There is no dispute that defense counsel represents all defendants in all capacities. But that alone does not establish any concurrent conflict of interest between the Town and Chief Humphries.

Plaintiffs suggest that defense counsel's representation of both the Town and Chief Humphries violates Rule 1.7 of Vermont's Rules of Professional Conduct. That rule provides:

> (a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:
>
> (1) the representation of one client will be directly adverse to another client; or
>
> (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.
>
> (b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:
>
> (1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;
>
> (2) the representation is not prohibited by law;

> (3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and
>
> (4) each affected client gives informed consent, confirmed in writing.

V.R.P.C. 1.7. Focusing on Rule 1.7(b)(3), Plaintiffs argue that this case involves the assertion of a claim by one client against another client; in their view "there most definitely would be a conflict between the qualified immunity defense and defenses for the Town." (Doc. 17 at 5.)

The Second Circuit has recognized that after *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978), "the interests of a municipality and its employee as defendants in a section 1983 action are in conflict." *Dunton v. Suffolk Cnty., State of N.Y.*, 729 F.2d 903, 907 (2d Cir.), *amended on other grounds*, 748 F.2d 69 (2d Cir. 1984). The *Dunton* court explained:

> A municipality may avoid liability by showing that the employee was not acting within the scope of his official duties, because his unofficial actions would not be pursuant to municipal policy. The employee, by contrast, may partially or completely avoid liability by showing that he was acting within the scope of his official duties. If he can show that his actions were pursuant to an official policy, he can at least shift part of his liability to the municipality. If he is successful in asserting a good faith immunity defense, the municipality may be wholly liable because it cannot assert the good faith immunity of its employees as a defense to a section 1983 action.

*Id.* Despite this potential conflict in § 1983 cases against municipalities and their employees, the court concludes that *Dunton* is distinguishable and there is no basis to disqualify defense counsel.

Here, the Town and Chief Humphries both argue that Chief Humphries was acting in his official capacity. (Doc. 18 at 3.) There appears to be no conflict among the defendants on that issue. *See Rodick v. City of Schenectady*, 1 F.3d 1341, 1350 (2d Cir. 1993) (distinguishing *Dunton* because "both the City and the officers argued that the officers were acting in their official capacity"). And while a municipal official defending a § 1983 claim might raise a

qualified immunity defense, that potential conflict has not materialized in this case. *Cf. Patterson v. Balsamico*, 440 F.3d 104, 115 (2d Cir. 2006) (distinguishing *Dunton* because the defendant never attempted to assert a qualified immunity defense).

In this case, Plaintiffs have identified only a *potential* for conflict. That is insufficient to grant Plaintiffs' motion to disqualify defense counsel. *See Lieberman v. City of Rochester*, 681 F. Supp. 2d 418, 425 (W.D.N.Y. 2010) ("District courts have interpreted *Dunton* to require disqualification of counsel representing both an individual officer and the municipal employer in Section 1983 cases only where counsel acts in a way that is *actually* against the officer's interests. . . . [A] potential conflict is insufficient to warrant disqualification . . . ."). The court will deny the motion.

**II. Motion to Dismiss (Doc. 9)**

As noted above, Defendants argue that Plaintiffs' claims are barred by claim preclusion, the statute of limitations, and the *Rooker-Feldman* doctrine, and that there is no legal basis for the requested relief. (Doc. 9.) Plaintiffs disagree on each point. (Doc. 12.) The court begins by discussing the Rule 12(b)(6) standard.

**A. Rule 12(b)(6) Standard**

To survive a Rule 12(b)(6) motion, a pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also* Fed. R. Civ. P. 8(a)(2). The court must also draw all reasonable inferences in the non-moving party's favor. *Lanier v. Bats Exch., Inc.*, 838 F.3d 139, 150 (2d Cir. 2016). Dismissal is appropriate when "it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law." *Conopco, Inc. v.*

*Roll Int'l*, 231 F.3d 82, 86 (2d Cir. 2000). A defendant may raise an affirmative defense in a pre-answer Rule 12(b)(6) motion "if the defense appears on the face of the complaint." *Whiteside v. Hover-Davis, Inc.*, 995 F.3d 315, 319 (2d Cir. 2021) (quoting *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008)).

Generally, the court construes the submissions of self-represented litigants "liberally" and interprets them "to raise the strongest arguments that they suggest." *Felder v. United States Tennis Ass'n*, 27 F.4th 834, 841 (2d Cir. 2022) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)). The Second Circuit has also advised that courts "should be particularly solicitous of *pro se* litigants who assert civil rights claims." *Tracy v. Freshwater*, 623 F.3d 90, 102 (2d Cir. 2010) (citing *Davis v. Goord*, 320 F.3d 346, 350 (2d Cir. 2003)). "Nevertheless, even pro se plaintiffs asserting civil rights claims cannot withstand a motion to dismiss unless their pleadings contain factual allegations sufficient to raise a right to relief above the speculative level." *Felder*, 27 F.4th at 841 (internal quotation marks omitted).

A practicing lawyer representing herself ordinarily receives "no solicitude at all." *Tracy*, 623 F.3d at 102. Lillian Billewicz has legal training and was previously a member of the Vermont bar and remains a member of the bar of this court. *See In re Billewicz*, 161 Vt. 631, 641 A.2d 368 (1994) (mem.); *see also In re Billewicz*, No. 2:94-mc-25 (D. Vt. May 4, 1994), ECF No. 3. Here, it is not clear that Ms. Billewicz is formally practicing law,[2] and "*Tracy* leaves some room for an attorney to receive *pro se* solicitude." *Cohen Lans LLP v. Naseman*, No. 14-CV-4045 (JPO), 2017 WL 1929587, at *2 (S.D.N.Y. May 10, 2017). The court nevertheless

[2] Although, as discussed below, she does appear to be an active litigant in a variety of courts.

concludes that Ms. Billewicz's legal training and experience suggests that she is entitled to, at most, only minimal *pro se* solicitude.

"When deciding a motion to dismiss pursuant to Rule 12(b)(6), courts focus primarily on the allegations in the complaint." *Romano v. Kazacos*, 609 F.3d 512, 520 (2d Cir. 2010). However, the court may also consider materials that are integral to the complaint or that are appropriate for judicial notice. *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 156 (2d Cir. 2006); *see also Simmons v. Trans Express Inc.*, 16 F.4th 357, 360 (2d Cir. 2021) (courts ruling on Rule 12(b)(6) motions may consider matters of which judicial notice may be taken). Defendants request that the court consider documents and decisions from three matters in Vermont state court in which Plaintiffs sued the Town. (Doc. 9 at 3–4.) The court agrees that the filings and decisions in those cases are public records that may properly be considered here. *See Demarest v. Town of Underhill*, No. 2:21-cv-167, 2022 WL 911146, at *4 (D. Vt. Mar. 29, 2022) (taking judicial notice of Vermont Supreme Court decisions issued in litigation between the plaintiff and the town). The court proceeds to briefly review the relevant litigation in the Vermont courts.

**B. Prior Litigation in Vermont State Court**

***1. Billewicz I***

In *Billewicz v. Town of Fair Haven*, 2021 VT 20, 254 A.3d 194 ("*Billewicz I*"), Johnathan, Michael, and Lillian Billewicz and the J and M Investment Trust appealed from the trial court's grant of summary judgment for the Town of Fair Haven and against the plaintiffs on their claim challenging the deeds purporting to convey four of their properties[3] to the Town

[3] Although the *Billewicz I* opinion does not specifically identify the properties, the parties' filings in that case confirm that they include the same River Street and Union Street

following a tax sale on March 18, 2014. *Billewicz I*, 2021 VT 20, ¶ 1. Plaintiffs did not exercise their one-year statutory right of redemption and the Town tax collector executed deeds transferring the properties to the Town on April 1, 2015. *Id.* ¶ 6. But the reports of sale were not recorded in the Town Clerk's office until November 30, 2017. *Id.*

In their lawsuit filed in Vermont Superior Court on March 22, 2018, the plaintiffs claimed that the Town took possession of the properties on or about May 18, 2017 and have since physically excluded them from the properties. (Doc. 9-2 ¶ 48.) They asserted claims of "quiet title, trespass to real property and to chattel, invasion of privacy, and conversion." *Billewicz I*, 2021 VT 20, ¶ 8. "Each claim was predicated on the theory that the tax deeds conveying the properties to the Town were void because the tax collector did not record the reports of sale within the thirty-day period following the tax sale." *Id.*; *see also* 32 V.S.A. § 5255 (requiring report of sale to be filed within 30 days after sale).

The trial court concluded that the plaintiffs' claims were barred by the one-year statute of limitations at 32 V.S.A. § 5294(4) for claims challenging the validity of a tax collector's acts. *Billewicz I*, 2021 VT 20, ¶ 1. Plaintiffs argued that the trial court erred by not instead applying the three-year statute of limitations for the recovery of land sold at a tax sale under 32 V.S.A. § 5263. *Id.* The Vermont Supreme Court affirmed, reasoning that "because the issue on which this matter turns is a challenge to the tax collector's procedural steps in collecting the tax, §§ 5294 and 5295 do apply, and this action is thereby barred." *Id.* ¶ 23.

---

properties that are at issue in this federal case. *See* Appellant's Brief, *Billewicz I* (No. 2020-173), 2020 WL 7407437, at *1.

**2. *Billewicz II***

In *Billewicz v. Town of Fair Haven*, No. 21-AP-244, 2022 WL 424881 (Vt. Feb. 11, 2022) (mem.) ("*Billewicz II*"), the same plaintiffs appealed from the Vermont Superior Court's summary judgment decision concluding that claim preclusion barred their claims. *Id.* at *1. After the Court in *Billewicz I* denied their motion for reargument, the plaintiffs filed a new lawsuit against the Town, "again alleging that the Town failed to record the report of sale as required by 32 V.S.A. § 5255, and asserting claims for negligence, trespass to real property and chattel, invasion of privacy, and conversion." *Id.* Opposing the Town's claim-preclusion and issue-preclusion arguments, Plaintiffs argued that their new suit was distinguishable because "it alleged that the town clerk failed to record the deeds of the tax sale within the statutory time, whereas they had previously argued the town tax collector had failed to do this duty." *Id.*

The *Billewicz II* Court affirmed the trial court's grant of summary judgment to the Town on preclusion grounds, reasoning that the causes of action in both *Billewicz I* and *Billewicz II* were sufficiently similar for claim preclusion to apply. *See id.* at *2. The Court rejected the plaintiffs' argument that they were asserting distinct trespass claims based on new alleged incursions to their land and chattel. The Court stated:

> Plaintiffs' trespass claims, whether for alleged incursions that occurred before or after 2018, are inextricably interwoven with their assertion that they are the rightful owners of the land parcels and not the Town because the Town failed to properly timely record the reports of the tax sale. Contrary to plaintiffs' assertion, there is no new legal theory here. Plaintiffs' "new" trespass claims rest on the same allegations asserted in *Billewicz I*, and therefore claim preclusion bars their suit.

*Id.* The Court denied the plaintiffs' motion for reargument on March 4, 2022. (*See* Doc. 9-8.)

**3. *Billewicz III***

Finally, in *Billewicz v. Town of Fair Haven*, No. 22-CV-677 (Vt. Super. Ct. filed Feb. 28, 2022) ("*Billewicz III*"), the same plaintiffs sued the Town a third time. They claimed that the

Town interfered with the use and enjoyment of their properties when it placed boards, plywood, and padlocks on the properties. (*See* Doc. 9-9 at 4 n.6.) In March 2018 the Town filed a motion to dismiss and also served the plaintiffs with a motion for sanctions under V.R.C.P. 11. (*See* Doc. 9-9.) Plaintiffs voluntarily withdrew their complaint in *Billewicz III* on March 28, 2022. (*See* Doc. 9-11.) Plaintiffs filed their Complaint in this federal case on the same day. (Doc. 1.)

### C. Statute of Limitations for § 1983 Claims

In § 1983 actions, this court applies Vermont's three-year limitations period for personal injuries. *See Demarest*, 2022 WL 911146, at *6 ("Section 1983 actions that are filed in Vermont are subject to Vermont's three-year statute of limitations for personal injury actions."); *accord Shields v. Gerhart*, 155 Vt. 141, 582 A.2d 153, 144 (1990) (recognizing three-year limitation period for § 1983 actions). The accrual of a § 1983 action is a "question of federal law that is *not* resolved by reference to state law." *Wallace v. Kato*, 549 U.S. 384, 388 (2007). The federal rule is that § 1983 claims accrue when the plaintiff "knows or has reason to know of the injury which is the basis of his action." *Hogan v. Fischer*, 738 F.3d 509, 518 (2d Cir. 2013) (quoting *Pearl v. City of Long Beach*, 296 F.3d 76, 80 (2d Cir. 2002)); *see also Crosson v. Vt. Dep't of Child. & Fam. Servs.*, No. 5:19-cv-197, 2020 WL 12957489, at *3 (D. Vt. May 18, 2020) (citing *Holiday v. Martinez*, 68 F. App'x 219, 222 (2d Cir. 2003) (summary order)).[4]

The parties dispute when Plaintiffs knew of their alleged injuries. Defendants contend that Plaintiffs' § 1983 claims accrued on May 18, 2017—the date the Town allegedly took

---

[4] This rule for § 1983 claims is an exception to the general federal rule, which states that accrual occurs "when the plaintiff has a complete and present cause of action." *JD1 v. Canisius Coll.*, No. 1:21-cv-521, 2022 WL 2308902, at *11 (W.D.N.Y. June 27, 2022) (quoting *Twersky v. Yeshiva Univ.*, 579 F. App'x 7, 9 (2d Cir. 2014) (summary order)).

possession of the River Street and Union Street properties. (Doc. 9 at 17.) Plaintiffs maintain that their § 1983 claims did not accrue until September 2019—when Chief Humphries threatened to arrest Jonathan and Lillian Billewicz and when the Town boarded up the River Street property. (Doc. 12 at 11.)

The court agrees with Defendants on the accrual date. Although the Complaint focuses on the September 2019 events, the court's review of *Billewicz I, II*, and *III* reveals that the injury that is the basis for Plaintiffs' action is the Town's action taking possession of the properties on May 18, 2017. Plaintiffs' Complaint in this case—filed March 28, 2022—is well outside the three-year window.

The court rejects Plaintiffs' theory that the "continuing violation" doctrine applies. The Second Circuit has applied the "continuing violation" doctrine in § 1983 cases. *See Cornwell v. Robinson*, 23 F.3d 694, 703–07 (2d Cir. 1994) (discussing the doctrine in the context of § 1983 claims; stating that "[w]here a continuing violation can be shown, the plaintiff is entitled to bring suit challenging all conduct that was a part of that violation, even conduct that occurred outside the limitations period"). But where plaintiffs "complain of 'discrete acts' separated in time, the usual limitations rule applies." *DeSuze v. Ammon*, 990 F.3d 264, 272 (2d Cir. 2021) (quoting *Gonzalez v. Hasty*, 802 F.3d 212, 220 (2d Cir. 2015)).

Critically, "a continuing violation cannot be established merely because the claimant continues to feel the effects of a time-barred . . . act." *Id.* (alteration in original; quoting *Harris v. City of New York*, 186 F.3d 243, 250 (2d Cir. 1999)). The case on which Plaintiffs rely is in accord. *See Brown Park Ests.-Fairfield Dev. Co. v. United States*, 127 F.3d 1449, 1456 (Fed. Cir. 1997) ("[A] claim based upon a single distinct event, which may have continued ill effects later on, is not a continuing claim."). In light of the *Billewicz I, II*, and *III* decisions, the

court concludes that the continuing violation doctrine is inapplicable because Plaintiffs' allegations about the September 2019 events are complaints about the continued effects of the Town taking possession of the properties on or about May 18, 2017.

Even if Plaintiffs' claims were not time-barred, the doctrine of claim preclusion would independently bar their claims for the reasons discussed below.

**D. Claim Preclusion**

"The res judicata effect of state-court decisions in § 1983 actions is a matter of state law." *Heck v. Humphrey*, 512 U.S. 477, 480 n.2 (1994) (citing *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75 (1984)); *see also Grundstein v. Vt. Bd. of Bar Examiners*, No. 21-1549, 2022 WL 1669459, at *1 (2d Cir. May 26, 2022) (summary order) ("Under the Full Faith and Credit Act, 28 U.S.C. § 1738, a federal court must apply Vermont res judicata law to Vermont state court judgments."). "In Vermont, 'a final judgment in previous litigation bars subsequent litigation if the parties, subject matter, and cause(s) of action in both matters are the same or substantially identical.'" *Id.* (quoting *Carlson v. Clark*, 2009 VT 17, ¶ 13, 185 Vt. 324, 970 A.2d 1269). The doctrine "bars parties from relitigating, not only those claims and issues that were previously litigated, but also those that could have been litigated in a prior action." *Id.* (quoting *Carlson*, 2009 VT 17, ¶ 13).

**1. Identity of Parties**

Plaintiffs concede that they are the same in this case and in *Billewicz I, II,* and *III.* (*See* Doc. 12 at 5.) But they argue that the defendants are different because in all cases the Town is a defendant but in this federal case Chief Humphries is named as a defendant in his individual capacity, whereas he was not a defendant in the prior cases. It is true that in Vermont, "a public official sued in [his] individual capacity is generally not considered to be in privity with the

government for the purposes of res judicata." *Lamb v. Geovjian*, 165 Vt. 375, 380, 683 A.2d 731, 735 (1996). But there is an exception: "[W]hen a party is sued as an individual for actions taken solely in [his] official role, res judicata may not be circumvented." *Id.*

That exception applies in this case. The Complaint names Chief Humphries in his individual capacity. But all of his actions as alleged in the Complaint are solely *official* actions. Chief Humphries's alleged threat to arrest Jonathan and Lillian Billewicz was an official action. *See Yatsko v. Graziolli*, 458 F. Supp. 3d 702, 713 (N.D. Ohio 2020) (police officer's threat to arrest "demonstrate[d] that he intended to act in his official capacity as a police officer"). His alleged direction or supervision of DPW personnel placing plywood over the entrances of the River Street property was also an official action. *Cf. Stouffer v. City of Reading*, No. 15-3523, 2017 WL 6368013, at *13 (E.D. Pa. Dec. 13, 2017) (no evidence that defendant building inspector who ordered that building be boarded up acted outside the scope of his official capacity). The Complaint itself asserts that Chief Humphries was "acting within the scope of his employment and acting under the color of law." (Doc. 1 ¶ 8; *see also id.* ¶ 14 (alleging that Chief Humphries was acting under color of state law "at all times relevant hereto"); ¶ 18 (actions were "under color of law").) The parties in *Billewicz I, II,* and *III* and in this federal case are the same or substantially identical.

**2. Subject Matter and Causes of Action**

"Vermont applies a transactional test to determine if the subject matter and causes of action are the same in both cases." *Grundstein*, 2022 WL 1669459, at *2 (citing *Faulkner v. Caledonia Cnty. Fair Ass'n*, 2004 VT 123, ¶¶ 11–15, 178 Vt. 51, 869 A.2d 103, and *Pomfret Farms Ltd. P'ship v. Pomfret Assocs.*, 174 Vt. 280, 283–84, 811 A.2d 655, 658–59 (2002)). "The subject matter and causes of action are thus considered to be the same if the operative facts

are the same." *Id.* To compare the "operative" facts in different causes of action, the court focuses on "whether the same evidence will support both of them." *Demarest v. Town of Underhill*, 2021 VT 14, ¶ 13, 256 A.3d 554 (quoting *Faulkner*, 2004 VT 123, ¶ 11). The court also considers "whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." Restatement (Second) of Judgments § 24; *see Faulkner*, 2004 VT 123, ¶¶ 11–15 (adopting § 24 of the Second Restatement).

The court concludes that Plaintiffs' claim in this federal case arises out of the same transaction that gave rise to *Billewicz I, II,* and *III.* Similar to *Faulkner*, the facts underlying all four of the Billewicz's cases "spring from the same 'origin.'" *Faulkner*, 2004 VT 123, ¶ 15. In these cases, that origin is the 2014 tax sale and the Town's subsequent possession of the River Street and Union Street properties. The facts are geographically related—all four cases relate to the River Street and Union Street properties in Fair Haven, Vermont. The motivation in all four cases is also the same: Plaintiffs seek relief based on their view that the properties remain lawfully theirs because the Town failed to comply with the 30-day filing requirement in 32 V.S.A. § 5255.

Plaintiffs concede that there is "some relation in time, space, origin and motivation" between all four cases. (Doc. 12 at 8.) But they argue that the causes of action are not the same because the § 1983 claims are distinct from the tort claims they brought in the prior cases. (*See id.*) The court rejects that argument as inconsistent with the applicable transactional test. The fact that Plaintiffs did not assert a § 1983 claim in *Billewicz I, II,* or *III* is not dispositive. *See Neborsky v. Town of Victory*, No. 5:17-cv-142, 2018 WL 1033225, at *3 (D. Vt. Feb. 22, 2018) (Vermont's transactional test "requires more than a superficial examination of the counts

of the complaint"); *Cornelius v. State*, No. 2020-227, 2021 WL 1853674, at *2 (Vt. May 7, 2021) (mem.) (citing *Cohen v. Shea*, 788 F. Supp. 66, 68 (D. Mass. 1992), where claim preclusion barred § 1983 claims not raised in prior litigation).

It is true that in *Neborsky* the facts underlying a prior Vermont public records act litigation in state court and the § 1983 action in federal court did not constitute a "single transaction." *Neborsky*, 2018 WL 1033225, at *3. The court reasoned that despite a "significant relation in time, space, origin, and motivation," there were "large and crucial" gaps between the relevant underlying facts:

> The facts underlying the public records act litigation pertained to the extent of Batchelder's duties during the course of the audit and the extent of Batchelder's care and control over town records. The facts underlying the claims against Batchelder in the present litigation concern Batchelder's statements to third parties concerning Neborsky, the harms that Neborsky suffered as a result of those statements, and the nature of the relationship between Batchelder and the Town of Victory. While both actions implicate the broad circumstances of the general relationship between Batchelder and the Town of Victory, the present action also turns on the specific circumstances and context in which the false statements were made. The facts underlying the two actions are related to a considerable degree, but many of the most important facts in this case were outside the scope of the public records action.

*Id.* Plaintiffs argue that this case is like *Neborsky* because Plaintiffs are "challenging acts of the Defendant that are different than acts challenged and decided in the State Courts." (Doc. 12 at 7.)

The court disagrees. Similar to the Vermont Supreme Court's determination in *Billewicz II*, Plaintiffs' allegations in this § 1983 case are "based on new alleged incursions to their land" but "the same nucleus of facts is at issue." *Billewicz II*, 2022 WL 424881, at *2. The fact that the alleged 2019 incursions occurred after the 2014 tax sale and after the Town's alleged seizure of the properties in May 2017 did not alter the analysis in *Billewicz II* and does not alter the federal court's conclusion in this case.

Plaintiffs further argue that the facts in this case do not form a convenient trial unit and that analyzing the facts in a single trial unit would not conform to the parties' expectations. (Doc. 12 at 8.) The court in *Neborsky* concluded that the facts in that case did not form a convenient trial unit, in part because suits under Vermont's Public Records Act are required to be "expedited in every way." *Neborsky*, 2018 WL 1033225, at *3 (citing 1 V.S.A. § 319(b)). In contrast, there is no public records act claim in this case and no claim is required to be prioritized over any other. Plaintiffs assert that their federal civil rights claims would not have "meshed well" with their state-law claims. (Doc. 12 at 8.) But Plaintiffs offer no explanation for that assertion; moreover, courts routinely adjudicate federal and state claims together. These factors do not weigh against the application of claim preclusion.

**3. Prior Final Judgment "On the Merits"**

*Billewicz I* and *II* resulted in final judgments—affirmed on appeal—for the defendants in those cases.[5] But the "final judgment" for claim preclusion purposes must be "on the merits." *Kneebinding, Inc. v. Howell*, 2020 VT 99, ¶ 39, 213 Vt. 598, 251 A.3d 13 (quoting *Iannarone v. Limoggio*, 2011 VT 91, ¶ 15, 190 Vt. 272, 30 A.3d 655); *see also In re Town Highway No. 20*, 2012 VT 17, ¶ 63, 191 Vt. 231, 45 A.3d 54 ("Claim preclusion applies only where there was a final judgment on the relevant issue."). Implicitly arguing that the "merits" concern ownership of the properties at issue, Plaintiffs maintain that "there has never been an outright judicial determination that Plaintiffs do not own the property." (Doc. 12 at 9–10.) Defendants contend

[5] *Billewicz III* did not end with a final judgment because the plaintiffs voluntarily dismissed that case. Such voluntary dismissals do not result in final judgment. *See* V.R.C.P. 41(a)(1) ("[A]n action or claim may be voluntarily dismissed by the plaintiff without order of court . . . .").

that the Vermont Supreme Court rejected the same argument in *Billewicz II* and that Plaintiffs are now attempting an "end run" around *Billewicz I* and *II*. (Doc. 15 at 2–3.)

"As the Supreme Court has recognized, 'the traditional rule is that expiration of the applicable statute of limitations merely bars the remedy and does not extinguish the substantive right, so that dismissal on that ground does not have claim-preclusive effect in other jurisdictions with longer, unexpired limitations periods.'" *Cloverleaf Realty of N.Y., Inc. v. Town of Wawayanda*, 572 F.3d 93, 85 (2d Cir. 2009) (quoting *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 504 (2001)). "Stated differently, unless a state's claim-preclusion law departs from the traditional rule and treats a dismissal for timeliness as a ruling on the merits of the claim, courts in another jurisdiction need not give claim-preclusive effect to a dismissal on timeliness grounds." *Id.*; *see also* 18 *Moore's Federal Practice – Civil* § 131.30[3][g][ii] ("If the plaintiff in the subsequent action [in the federal court system] asserts additional theories of recovery not barred by any applicable statute of limitations, the action will still be barred unless, under relevant state law, a dismissal on timeliness grounds is not considered on the merits."); *see generally Joseph v. Athanasopoulos*, 648 F.3d 58, 61 (2d Cir. 2011) (discussing "interjurisdictional preclusion"; certifying question to the New York Court of Appeals).

For the reasons stated above, the court concludes that Plaintiffs' § 1983 claims are untimely. But even if the claims were not time-barred, claim preclusion applies to bar them. For claim-preclusion purposes, the court must determine whether, under Vermont law, a limitations dismissal is considered "on the merits." To answer that question, the court begins with Rule 41(b) of Vermont's Rules of Civil Procedure, which states:

> Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision (b) and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join a party under Rule 19, operates as an adjudication upon the merits.

Here, Rule 41(b) might suggest that the limitations dismissal in *Billewicz I* operated as "an adjudication upon the merits." But the United States Supreme Court in *Semtek* articulated "a number of reasons for believing that the phrase 'adjudication upon the merits' does not bear that meaning in [federal] Rule 41(b)." *Semtek*, 531 U.S. at 503. To the extent any of those reasons apply to the analogous Vermont rule, the court finds further support in the *Billewicz II* decision.

The *Billewicz II* decision does not explicitly analyze whether the limitations dismissal in *Billewicz I* was "on the merits." The parties' briefing to the Vermont Supreme Court also did not discuss the issue. *See* Appellant's Brief, *Billewicz II*, 2020 WL 7407437; Appellee's Brief, *Billewicz II*, 2020 WL 7407438; Appellant's Reply Brief, *Billewicz II*, 2020 WL 7407439. However, since the *Billewicz II* Court affirmed that claim preclusion barred the plaintiffs' claims, this court concludes that Vermont's claim-preclusion law does treat limitations dismissals as rulings "on the merits."

This conclusion is consistent with the rule in the Second Circuit. *See PRC Harris, Inc. v. Boeing Co.*, 700 F.2d 894, 896 (2d Cir. 1983) ("The longstanding rule in this Circuit . . . is that a dismissal for failure to comply with the statute of limitations will operate as an adjudication on the merits, unless it is specifically stated to be without prejudice."). It is also consistent with the rule in multiple other jurisdictions. *See, e.g.*, *Rose v. Town of Harwich*, 778 F.2d 77, 80 (1st Cir. 1985) ("[O]ur survey of recent cases suggests a clear trend toward giving claim-preclusive effect to dismissals based on statutes of limitations." (citing cases)). And it is consistent with the purpose of claim preclusion. *See Demarest*, 2021 VT 14, ¶ 11 (claim preclusion advances the efficient and fair administration of justice "because it serves (1) to conserve the resources of courts and litigants by protecting them against piecemeal or repetitive litigation; (2) to prevent vexatious litigation; (3) to promote the finality of judgments and encourage reliance on judicial

decisions; and (4) to decrease the chances of inconsistent adjudication"). Given that Plaintiffs have litigated this transaction twice before the Vermont Supreme Court, the purposes of claim preclusion would be served by treating the prior dismissals on timeliness grounds as final judgments on the merits.

**4. Whether an Exception Applies**

Plaintiffs invoke an exception under the Restatement (Second) of Judgments § 26(1)(f), which states that claim preclusion may be overcome "for an extraordinary reason," including situations where the prior litigation failed to "yield a coherent disposition of the controversy." The Vermont Supreme Court has recognized this exception but has cautioned that "such exceptions are 'not lightly to be found but must be based on a clear and convincing showing of need.'" *Faulkner*, 2004 VT 123, ¶ 19 (quoting Restatement (Second) of Judgments § 26 cmt. i). Plaintiffs have not made that showing here.

In Plaintiffs' view, there can be no "coherent disposition of the controversy" until a court makes an "outright judicial determination that Plaintiffs do not own the property." (Doc. 12 at 9–10.) But as discussed above, the limitations dismissal in *Billewicz I* does resolve the controversy "on the merits." The case that Plaintiffs cite—*Kruckenberg v. Harvey*, 2005 WI 43, 279 Wis.2d 520, 694 N.W.2d 879—does not help them meet the "clear and convincing" showing that would be required for the § 26(1)(f) exception. *Kruckenberg* does not necessarily state the law in Vermont, and even if it did, the court in that case adopted the following "narrowly drawn" exception: "When an action between parties or their privies does not explicitly determine the location of a boundary line, the doctrine of claim preclusion will not bar a future declaratory judgment action to determine the proper location of the boundary line." *Kruckenberg*, 2005 WI 43, ¶ 41. That exception has no application in this case.

**E. Leave to Amend**

The court's conclusions above make it unnecessary to consider Defendants' remaining arguments for dismissal under Rule 12(b)(6). The court therefore turns to the question of whether to grant leave to amend. "Where a district court 'cannot rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim,' a pro se complaint 'should not be dismissed without granting leave to amend at least once.'" *Elder v. McCarthy*, 967 F.3d 113, 132 (2d Cir. 2020) (quoting *Shomo v. City of New York*, 579 F.3d 176, 183–84 (2d Cir. 2009)). Here, as noted above, Ms. Billewicz has legal training and it is not clear that she should receive that solicitude. In any case, better pleading will not cure the limitations or claim-preclusion bars. The court will not grant leave to amend.

**III. Motion for Rule 11 Sanctions (Doc. 10)**

Asserting that this federal case represents Plaintiffs' fourth attempt to litigate the same set of facts, Defendants argue that the Complaint lacks any objectively reasonable basis. They seek the following sanctions under Fed. R. Civ. P. 11: (1) dismissal of the Complaint with prejudice; (2) imposition of a filing injunction precluding further pro se pleadings related to the River Street and Union Street properties without prior court authorization; and (3) directing Plaintiffs to pay all of the Town's reasonable attorney's fees incurred in connection with this action and with *Billewicz III*. (Doc. 10.) Plaintiffs oppose the Rule 11 motion arguing that (1) Defendants' "safe harbor" notice of the motion under Rule 11(c)(2) was improperly filed before the court had jurisdiction over Defendants; and (2) "[t]here is no improper purpose for the filing of Plaintiffs' case." (Doc. 13 at 2.) Defendants filed a reply on May 26, 2022, asserting that "Plaintiffs have failed to substantively answer the Defendants' call for sanctions." (Doc. 16 at 9.)

**A. "Safe Harbor" Requirement**

A Rule 11 motion for sanctions "must be served under Rule 5, but must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets." Fed. R. Civ. P. 11(c)(2). Plaintiffs concede that at 9:44 a.m. on April 6, 2022, counsel for Defendants advised Ms. Billewicz of his intent to file a Rule 11 motion and supplied a copy of the motion. (Doc. 13 at 3; *see also* Doc. 13-3.) But Plaintiffs assert that the April 6, 2022 notice was "premature" because Defendants were not formally served in this case until later in the day on that date. (Doc. 13 at 3.) Defendants argue that Plaintiffs' argument on this point is "demonstrably specious." (Doc. 16 at 6.)

Plaintiffs have cited no authority for the proposition that a defendant cannot serve a Rule 11(c)(2) "safe harbor" notice until the defendant has itself been formally served with process under Rule 3. Nothing in the text of Rule 11(c)(2) imposes that requirement. It is true that the court cannot impose sanctions against a non-party over whom it lacks jurisdiction. 2 *Moore's Federal Practice – Civil* § 11.23[4]. But that is not an issue here and it is not a requirement that a "safe harbor" notice cannot be served until the court has perfected personal jurisdiction over the party giving notice. Even if the court had never gained personal jurisdiction over Defendants, it could still award sanctions in their favor. *See* 2 *Moore's Federal Practice – Civil* § 11.23[4] ("A district court has authority to award sanctions to a defendant over whom it lacks personal jurisdiction but who has been forced to defend a frivolous complaint.").

**B. Whether Plaintiffs Violated Rule 11(b)**

Defendants contend that Plaintiffs' Complaint in this case were presented for an "improper purpose"—to "harass, cause unnecessary delay, or needlessly increase the cost of

litigation"—in violation of Rule 11(b)(1). They further assert that Plaintiffs' legal contentions are not "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law" in violation of Rule 11(b)(2). Plaintiffs insist that they "have not filed this [case] in a frivolous, legally unreasonable or factually unfounded manner." (Doc. 13 at 2.)

Initially, the court notes that "Rule 11 applies both to represented and *pro se* litigants." *Maduakolam v. Columbia Univ.*, 866 F.2d 53, 56 (2d Cir. 1989); *see also* Fed. R. Civ. P. 11 advisory committee's note to 1993 amendment ("[A]ttorneys and pro se litigants have an obligation to the court to refrain from conduct that frustrates the aims of Rule 1"). Thus courts "may consider the special circumstances of litigants who are untutored in the law." *Maduakolam*, 866 F.2d at 56; *see also* Fed. R. Civ. P. 11 advisory committee's note to 1983 amendment ("Although the standard is the same for unrepresented parties . . . the court has sufficient discretion to take account of the special circumstances that often arise in *pro se* situations."). The court has considered Plaintiffs' circumstances here, including Ms. Billewicz's legal training and experience.

**1. Unwarranted Legal Contentions (Rule 11(b)(2))**

"With respect to legal contentions, the operative question is whether the argument is frivolous, i.e., the legal position has no chance of success, and there is no reasonable argument to extend, modify or reverse the law as it stands." *Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.*, 682 F.3d 170, 177 (2d Cir. 2012) (cleaned up). "Merely incorrect legal statements are not sanctionable under Rule 11(b)(2)." *Storey v. Cello Holdings, L.L.C.*, 347 F.3d 370, 391 (2d Cir. 2003). "Under an objective standard of reasonableness, to warrant an award of Rule 11 sanctions on the basis that a complaint is not well grounded in fact or law, it

must be patently clear that a claim has absolutely no chance of success." *Akerley v. N. Country Stone, Inc.*, No. 2:05-CV-314, 2006 WL 2452640, at *2 (D. Vt. Aug. 23, 2006) (internal quotation marks omitted).

Here, for the reasons discussed above, Plaintiffs' § 1983 claims had no chance of success because *Billewicz I, II,* and *III* establish the accrual date and further preclude operation of the continuing-violations doctrine by showing that Plaintiffs' allegations about the September 2019 events are complaints about the continued effects of the Town taking possession of the properties on or about May 18, 2017. Moreover, Plaintiffs had no reasonable basis to conclude that their § 1983 claims were not barred by claim preclusion. The identity of the parties, subject matter, and causes of action are the same here as in *Billewicz I*, and *Billewicz II* all but dictates the federal court's determination that *Billewicz I* was a final judgment "on the merits." Courts in other cases have reached similar conclusions. *See* 2 *Moore's Federal Practice – Civil* § 11.11[7][a] & n.47 ("A legal contention that is made in spite of the obvious preclusive effect of a judgment in prior litigation is not warranted by existing law." (citing cases)).

**2. Improper Purpose (Rule 11(b)(1))**

An "improper purpose" under Rule 11(b)(1) means "something other than mere assertion of frivolous or unfounded legal arguments or contentions that violate Rule 11(b)(2)." 2 *Moore's Federal Practice – Civil* § 11.11[8][e]. Defendants contend that Plaintiffs' litigation history establishes a Rule 11(b)(1) violation. They argue that Plaintiffs violated Rule 11(b)(1) by pursuing serial litigation in *Billewicz II* and *III* and in this federal case "to delay the implementation of *Billewicz I* and to impose needless litigation costs on the Town." (Doc. 10 at 10–11.) Defendants further contend that "Plaintiffs are playing procedural cat-and-mouse to

avoid sanctions, by voluntarily withdrawing *Billewicz III* just one day shy of the 12-day Rule 11 safe harbor deadline, only to file the present pleadings in this Court." (*Id.* at 11.)

This federal case goes beyond unfounded legal contentions. It is the fourth suit in a series of cases in which Plaintiffs have challenged the validity of the 2014 tax sale and its consequences. This repeated litigation suggests a pattern of abusive litigation and gives rise to an inference of improper motives. And because of Ms. Billewicz's legal training and experience, this is not a case where the plaintiffs might have misunderstood the operation of the statute of limitations or the doctrine of claim preclusion. In *Billewicz II*, Plaintiffs attempted to manufacture "new" claims by faulting the town clerk instead of the town tax collector; the Supreme Court flatly found that "there is no new legal theory here." *Billewicz II*, 2022 WL 424881, at *2. Plaintiffs avoided the sanctions motion in *Billewicz III* by withdrawing that case, only to file the same unfounded lawsuit in this court.

**C. Considerations Relevant to Crafting Sanctions**

Rule 11 provides that "[a] sanction imposed under this rule must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4). "The sanction may include nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation." *Id.* Courts determining appropriate sanctions may review considerations such as:

> Whether the improper conduct was willful, or negligent; whether it was part of a pattern of activity, or an isolated event; whether it infected the entire pleading, or only one particular count or defense; whether the person has engaged in similar conduct in other litigation; whether it was intended to injure; what effect it had on the litigation process in time or expense; whether the responsible person is trained in the law; what amount, given the financial resources of the responsible person, is

> needed to deter that person from repetition in the same case; what amount is needed to deter similar activity by other litigants . . . .

Fed. R. Civ. P. 11 advisory committee's note to 1993 amendment. Defendants assert that many of these factors are present in this case. (Doc. 10 at 11.)

**1. Willful Conduct; Pattern of Activity**

The court has already found that Plaintiffs brought this suit for an improper purpose in violation of Rule 11(b)(1). For the same reasons, the court concludes that Plaintiffs' conduct was willful rather than negligent. The litigation in *Billewicz I, II,* and *III* also suggests a pattern of activity rather than an isolated event.

**2. Entire Pleading**

Plaintiffs' improper conduct was not limited to a particular count or claim. Both § 1983 counts are the same claims as the barred claims that Plaintiffs previously litigated unsuccessfully multiple times in state court.

**3. Legal Training**

As noted above, Ms. Billewicz is trained in the law. Moreover, in cases before *Billewicz I, II,* and *III*, she has had experience in cases involving both the statute of limitations and claim preclusion. Early in her legal career she was disciplined in a case where she failed to file claims on behalf of her client in time to preserve them. *In re Billewicz*, 161 Vt. 631, 632, 641 A.2d 368, 369 (1994) (mem.). In 2005, the New Hampshire Supreme Court affirmed a determination that Ms. Billewicz's breach-of-contract claim was untimely. *Billewicz v. Casey*, No. 2005-0145, 2005 WL 8142462 (N.H. Dec. 5, 2005).

Five years later, the New Hampshire Supreme Court affirmed the dismissal on limitations grounds of claims that she and other trust beneficiaries brought against the interim trustee. *Billewicz v. Ransmeier*, 161 N.H. 145, 13 A.3d 116 (2010). In 2020 the Vermont Superior Court

concluded that Ms. Billewicz's motion to vacate the 2017 sale of the "Santa's Land" amusement park was "an attempt to relitigate claims of trademark infringement and valuation, which had already been litigated and decided in earlier cases and were therefore barred by issue and claim preclusion." *In re Estate of Fanelli*, No. 2020-253, 2021 WL 2534548, at *2 (Vt. Apr. 9, 2021) (mem.). The Supreme Court in *Fanelli* also noted a prior appeal in which Ms. Billewicz failed to comply with a Court directive. *Id.*

**4. Similar Conduct in Other Litigation**

Ms. Billewicz has a history of filing nonmeritorious or deficient actions and appeals, along with failures to comply with court directives. The District Court of Appeal of Florida dismissed Ms. Billewicz's appeal in that case for failure to comply with three of that court's orders. *Billewicz v. Billewicz*, No. 2D07-4465, 2008 WL 2153852, at *1 (Fla. Dist. Ct. App. Apr. 24, 2008). In 2012, the Vermont Superior Court dismissed Ms. Billewicz's fifth appeal of a long-running proceeding regarding the guardianship for her mother, Bernice Billewicz. *In re Billewicz*, 2012 WL 4294071 (Vt. Super. Ct. May 31, 2012). In support of that appeal, she offered only her own "barebones hearsay allegations" that the probate judge who presided over the proceedings was under the influence of alcohol during court proceedings. *Id.* The Superior Court held that such allegations did "not come close" to meeting the standard for relief from judgment. *Id.*

Ms. Billewicz filed three pro se Chapter 13 bankruptcy cases in 2014, two of which were dismissed for failure to cure filing deficiencies. *See In re: Lillian E. Billewicz*, No. 14-10674 (Bankr. D. Vt. Dec. 19, 2014), ECF No. 11. The Bankruptcy Court dismissed the third case "based upon the Debtor's repeated failure to comply with this Court's orders and the requirements of Chapter 13." *In re: Lillian E. Billewicz*, No. 14-10674 (Bankr. D. Vt. Feb. 4,

2015), ECF No. 38. A Florida court affirmed an order denying Ms. Billewicz's motion to intervene in her brother's divorce. *See Billewicz v. MacRae*, 138 So.3d 597 (Fla. Dist. Ct. App. 2014) (per curiam). A district court remanded an eviction case to state court after Ms. Billewicz attempted to remove the case to federal court despite the absence of diversity of citizenship. *Lancaster v. Quillen Props., Inc.*, No. 2:14-cv-97-FtM-29DNF, 2014 WL 3587267 (M.D. Fla. July 18, 2014).

The Vermont Supreme Court concluded in *Billewicz v. Estate of Fanelli* that Ms. Billewicz's putative collateral action alleging fraud in the valuation of property was essentially a request for relief from a foreclosure judgment and that her appeal was "an attempt to circumvent the policy of finality." No. 2017-028, 2017 WL 945637, at *1 (Vt. Mar. 1, 2017) (mem.). In an appeal from the Vermont Secretary of State's conclusion that she had lost the rights to the trade name "Santa's Land," the Vermont Superior Court noted Ms. Billewicz's legal training and faulted her for attempting to "claim ignorance as to the need for tangible proof in connection with the assertions that are being contested at trial." *Billewicz v. Estate of Fanelli*, No. 358-7-19 Wncv, 2020 WL 11232109, at *3 (Vt. Super. Ct. Apr. 7, 2020).

**5. Deterrence**

Defendants assert that sanctions are necessary because "[a]ll indications are that Plaintiffs will not stop unless someone makes them stop." (Doc. 10 at 14.) The court agrees that a sanction is necessary to curtail further attempts to litigate the barred claims in *Billewicz I, II, III* and in this case.

**D. Sanctions**

**1. Dismissal of the Complaint**

The portion of Defendants' Rule 11 motion that seeks dismissal of the Complaint with prejudice is moot. The court has already concluded that the Complaint should be dismissed. And dismissal with prejudice is the proper outcome in this case. As the court has already concluded, better pleading will not cure the limitations or claim-preclusion bars. *See, e.g.*, *Reis v. Ben & Jerry's Homemade, Inc.*, No. 2:20-cv-119, 2020 WL 6110970, at *1 n.3 (D. Vt. Oct. 16, 2020) ("[S]ince the claims are clearly time-barred, dismissal with prejudice is the only proper disposition").

**2. Attorney's Fees**

Regarding Defendants' request that Plaintiffs pay the Town's attorney's fees incurred in this action and in *Billewicz III*, the court has authority to direct "payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation" but only "if imposed on motion and warranted for effective deterrence." Fed. R. Civ. P. 11(c)(4). Here, the court has found no prior cases imposing Rule 11 sanctions against Ms. Billewicz or even warning her that sanctions might be imposed. It is not clear that these requested sanctions are necessary for effective deterrence.

In addition, the court notes that it has discretion to fashion sanctions "based on inability to pay." *Star Mark Mgmt.*, 682 F.3d at 179. Although Ms. Billewicz has benefitted from the "substantial fortune" left by her father, *Billewicz v. Ransmeier*, 161 N.H. at 146, the court lacks evidence as to her ability to pay any sanction at this time. Notably, she acknowledged in her bankruptcy case that she lacked the income to fund a Chapter 13 plan. *In re: Lillian E. Billewicz*,

No. 14-10674 (Bankr. D. Vt. Feb. 4, 2015), ECF No. 38. The court will not impose attorney's fees as a sanction in this case.

### 3. Filing Injunction

To protect the public and the efficient administration of justice, "the court may prohibit an individual from filing new actions in the venue when he or she abuses the process of the courts to harass and annoy others with meritless, frivolous, vexatious, or repetitive filings." *Clervrain v. Clouser*, No. 5:22-cv-90, 2022 WL 1422188, at *2 (D. Vt. May 5, 2022) (cleaned up). Courts consider a variety of factors to determine whether or not to restrict a litigant's future access to the courts; "[u]ltimately, the question the court must answer is whether a litigant who has a history of vexatious litigation is likely to continue to abuse the judicial process and harass other parties." *Safir v. U.S. Lines, Inc.*, 792 F.2d 19, 24 (2d Cir. 1986). Here, the court concludes that a filing injunction is not yet warranted because a formal warning from the court may be adequate.

### 4. Warning

The court warns Ms. Billewicz that **future frivolous filings in this District may result in a filing injunction or other sanctions.**

## IV. Motion to Clarify Parties (Doc. 14)

Ms. Billewicz states that she is Michael Billewicz's mother and she has been "the person responsible for typing the pleadings." (Doc. 14 at 1.) She further states that she signed Michael's name to the pleadings in this case "with the understanding he wished to be a Plaintiff." (*Id.*) But she states that "this was a misunderstanding on my part and Michael does not wish to be a part of this litigation." (*Id.*) She seeks to drop Michael Billewicz as a party. No party has filed any opposition to this motion.

Rule 21 of the Federal Rules of Civil Procedure states that "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party." The court would not drop Michael Billewicz as a party without confirming his wishes directly with him. More importantly, the court concludes that granting Defendants' motion to dismiss eliminates any basis on which to drop Michael Billewicz as a party. The court will deny the motion as moot.

**Conclusion**

Plaintiffs' Motion to Clarify Parties (Doc. 14) is DENIED as MOOT.

Plaintiffs' Motion to Disqualify Attorneys (Doc. 17) is DENIED.

Defendants' Motion to Dismiss (Doc. 9) is GRANTED. Plaintiffs' claims are dismissed with prejudice.

Defendants' Motion for Rule 11 Sanctions (Doc. 10) is MOOT in part and GRANTED insofar as the court warns Ms. Billewicz that **future frivolous filings in this District may result in a filing injunction or other sanctions.**

Dated at Burlington, in the District of Vermont, this 11 day of August, 2022.

Geoffrey W. Crawford, Chief Judge
United States District Court